UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANRNOLD CELAYA,<br>CDCR #AN0122,<br><br>                        Plaintiff,<br><br>       vs.<br><br>CERVANTES, RAMIREZ, J. HILL,<br>                    Defendants. | Case No.:  3:23-cv-0089-BTM-NLS<br><br>**ORDER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A AND DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM** |

Plaintiff Arnold Celaya ("Celaya" or "Plaintiff"), a state prisoner proceeding *pro se*, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 and paid the civil filing fee. ECF Nos. 1, 3. Ceyala alleges Defendants Cervantes, Ramirez and Hill violated his constitutional rights under the Eighth Amendment, the Due Process Clause, and the Sixth Amendment. He seeks money damages. *See* ECF No. 1 at 10.

## I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A courts must conduct "early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)).

The required screening provisions of § 1915A apply to all prisoners, no matter their fee status. *See e.g. Resnick v. Hayes*, 213 F.3d 443, 446–47 (9th Cir. 2000). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017). "The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

The standard for determining whether a prisoner has failed to state a claim upon which relief can be granted under § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## II.    FACTUAL ALLEGATIONS

Plaintiff alleges that on November 18, 2022, he was waiting for a visit with his spouse which was supposed to begin at 1:00 p.m. ECF No. 1 at 3. Plaintiff had been waiting for "over an hour" to enter the visiting area when Lieutenant Cervantes called Plaintiff over to the "gate area." *Id.* at 4. Cervantes asked Plaintiff if he was "expecting something?" and Plaintiff responded "no." *Id.* Cervantes handcuffed Plaintiff and explained that two bindles

of "meth" had been found in the visitor's restroom. *Id.* Cervantes told Plaintiff that based on a "recent 1030"[1] he received, he "was going to frame and pin this on [Plaintiff]." *Id.* Cervantes told Plaintiff staff was under pressure from Warden Hill "to produce an inmate to fault [for] the recent violent deaths and overdoses." *Id.* Cervantes then uncuffed Plaintiff and told him that since Plaintiff's spouse was only observed using the restroom, he was "clear to go." *Id.*

As Ceyala entered the visiting area, he saw another inmate being interviewed by an Investigative Services Unit ("ISU") officer. Ceyala refused to speak to the ISU. Shortly before 3:00 p.m., Plaintiff was arrested and "put in cage" until 6:40 p.m., after which he was moved to administrative segregation. Plaintiff's spouse was also arrested. *Id.* at 4. Cervantes told Plaintiff his arrest was based on confidential information. *Id.*

Ceyala states he was not provided copies of the confidential information before being "sent to committee" on November 23, 2022. *Id.* at 4–5. He was not given 24-hour notice before the committee hearing and denied "all the videos of the date of the incident as well as any witnesses and statement from any officer." *Id.* at 6. He further alleges staff used a NIK[2] test "against [him] when [he] did not sign for it." *Id.* at 5. After the hearing "Hill approve(d) the corrupted behavior [and] approved a false classification committee chrono stating that he had received the confidential disclosure on [November 22, 2022]." *Id.* at 4. Ceyala went on a hunger strike due to the "distress" caused by the incident and his weight dropped from 271 to 257 pounds in the period after the committee hearing. *Id.* at 5.

Ceyala alleges that after placing him in administrative segregation, he was denied his property, including his television. He also states he had "no food, clothing and

---

[1] California Department of Corrections and Rehabilitation ("CDCR") Form 1030, also known as a "Confidential Information Disclosure Form," is used to convey information that the California Department of Corrections deems to be confidential. *See* CDCR Dep't Operation's Manual § 62050.10.4.

[2] A "Narcotics Identification Kit," ("NIK") tests for the presence of illicit drugs. *See Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 899 n.3 (5th Cir. 2000).

hygiene." *Id.* at 3. In addition, staff failed to properly deliver his legal mail. On December 19, 2022 "a piece of legal mail . . . came opened from ISU under J. Hill's orders." *Id.* at 7. The mail was "poorly taped up to try [and] deceive[] [him]." *Id.* at 7.

### III.   DISCUSSION

Ceyala raises three claims in his Complaint. He contends Defendants Cervantes, Ramirez and Hill violated his due process rights when he was confined to administrative segregation without his property and without a proper process. *Id.* 4–6. He also alleges the conditions of his confinement while in administrative segregation violated the Eighth Amendment. *Id.* at 3. Finally, he claims Defendants deprived him of his Sixth Amendment right to counsel when his legal mail was opened outside of his presence. *Id.* at 7.

#### A.   Official Capacity

While Ceyala indicates he is suing Cervantes in his individual capacity, he fails to indicate whether he is suing Hill and Ramirez in their individual or official capacities, or both. To the extent Plaintiff is suing Hill and Ramirez in their official capacities, he may not do so. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Here, Ceyala seeks only money damages from Hill and Ramirez and as such, he may only proceed against them in their individual capacities.

#### B.   Due Process

Ceyala argues his due process rights were violated when he was confined to administrative segregation after being falsely accused of attempting to bring illicit drugs into the prison through his wife. ECF No. 1 at 4–6. He further contends he was improperly deprived of his television while in administrative segregation. *Id.* at 3. Finally, he contends

his legal mail was tampered with in violation of his Sixth Amendment rights. *Id.* at 7.

### 1. Placement in Administrative Segregation

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim due process claim, Plaintiff must allege: "'(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *See Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). A disciplinary action implicates a protected liberty interest only when it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, to state a claim, Plaintiff must allege he was subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.*; *Keenan v. Hall*, 83 F.3d 1083, 1088 (9th Cir. 1996).

To meet this standard, Ceyala must allege facts which show "a dramatic departure from the basic conditions" of his confinement.[3] *Sandin*, 515 U.S. at 485. He has not. Placement in administrative segregation, in and of itself, does not implicate a protected liberty interest. *See id.* at 486 ("[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody."); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest.") Here, Ceyala has not adequately alleged he was deprived of a protected liberty interest by being placed in administrative segregation because he has failed to provide specific facts

---

[3] For example, in *Sandin*, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption in his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody. *Sandin*, 515 U.S. at 486–87.

to plausibly allege administrative segregation "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Giles v. Davis*, No. 21-15466, 2023 WL 128614, at *2 (9th Cir. Jan. 9, 2023) (citing *Johnson v. Ryan*, 55 F. 4th 1167, (9th Cir. 2022)). Thus, because Ceyala has failed to allege a liberty interest, he fails to state a due process claim against Defendants.[4] *See Sandin*, 515 U.S. at 486. Accordingly, the claim is dismissed. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121.

### 2.    *Deprivation of Property*

To the extent Ceyala alleges Defendants deprived him of property, including his television, while he was confined in administrative segregation, he also fails to state a claim.   Prisoners have a protected interest in their personal property. The Due Process Clause protects prisoners' interests in their personal property. *Hansen v. May*, 502 F.2d 728, 720 (9th Cir. 1974). However, where a prisoner alleges deprivation of property by the unauthorized acts of state officials, either negligent or intentional, he cannot state a constitutional claim where an adequate state post-deprivation remedy exists. *See Zinermon v. Burch*, 494 U.S. 113, 129–32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding unauthorized negligent or intentional deprivation of property does not violate due process if a meaningful post-deprivation remedy is available). The California Tort Claims Act provides an adequate post-deprivation state remedy for the random and unauthorized taking of property. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) ("California law provides an adequate post-deprivation remedy for any property deprivations.")

Here, Ceyala does not allege he was deprived of his property, including his television, pursuant to a prison policy or some other authorized action. Rather, Plaintiff

---

[4] Under Due Process Clause, a prisoner is entitled to minimal due process protections when charged with a disciplinary violation. *Wolff v. McDonnell*, 418 U.S. 539, 564–571 (1974). Such protections include the right to call witnesses, to present documentary evidence, and to have a written statement by the fact finder as to the evidence relied upon along and the reasons for the decision. *Id*. These procedural protections, however, only apply when the disciplinary action implicates a protected liberty interest. *Sandin*, 515 U.S. at 484.

claims Ramirez "stole" his television and other staff "lost [his] property slip" ECF No. 1 at 3. As currently pleaded, Ceyala's allegations are not sufficient to plausibly allege the deprivation of his property was authorized and intentional. Thus, plaintiff has an adequate post-deprivation remedy under California law. *Barnett*, 31 F.3d at 816–17. As currently stated, his claim based on the taking of his property is not cognizable under § 1983.

In sum, the Court dismisses Plaintiff's due process claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121.

## C. Eighth Amendment

Next, Ceyala argues Cervantes, Ramirez and Hill violated his Eighth Amendment rights by confining him to administrative segregation without providing him the "minimal treatment" required for inmates in administrative segregation, including "food, clothing and hygiene." ECF No. 1 at 3. The Eighth Amendment imposes upon prison officials the duty to provide humane conditions of confinement; prison officials must ensure that prisoners receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Id.* at 834. A prison official is "deliberately indifferent" if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. "[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835.

"Adequate food is a basic human need protected by the Eighth Amendment." *Keenan*, 83 F.3d at 1091. The Ninth Circuit held that denial of 16 meals in 23 days would constitute a "sufficiently serious deprivation" of a "basic life necessity." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009). Moreover, the knowing denial of food easily meets the subjective prong because "[t]he risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious." *Id.* at 814. Here, however, Ceyala makes only a

conclusory allegation that he had "no food" while in administrative segregation. He fails to provide specific facts about when and to what extent he was denied food. And notably, Ceyala admits he went on a "hunger strike" soon after his transfer to administrative segregation to protest the living conditions. ECF No. 1 at 3. As such, based on the facts alleged in Complaint, it is unclear whether Ceyala refused food, as opposed to being denied it by Ramirez, Cervantes, and/or Hill. Moreover, even assuming Ceyala was denied food, he fails to assert specific facts regarding the length and extent of the deprivation. *Foster*, 554 F.3d at 813 n.1 (stating that inmate's claim he was denied 16 meals in 23 days could amount to deliberate indifference but noting "relatively isolated occurrences do not appear to rise to the level of a constitutional violation"). Plaintiff also fails to allege facts to show a causal connection between any individual's defendant's conduct and the deprivation of food. *See Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011). In sum, Plaintiff's conclusory allegations fall short of stating a plausible Eighth Amendment claim based on a denial of food. *Iqbal,* 556 U.S. at 678.

Plaintiff's claim that he was denied clothing also conclusory. "The denial of adequate clothing can inflict pain under the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (abrogated in part on other grounds by *Sandin*, 515 U.S. at 487). To determine whether a purported denial of adequate clothing is serious enough to state an Eighth Amendment claim, the specific circumstances, nature, and duration of the deprivations are critical. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2006). Here, Ceyala vaguely states he had "no . . . clothing" after he was transferred to administration segregation. ECF No. 1 at 3. He elaborates no further. Ceyala provides no facts regarding how long he was purportedly without clothing or to what extent it was denied. In addition, Ceyala fails to connect or state how each individual defendant is involved with the alleged deprivation. *See Starr*, 652 F.3d at 1205–06 ("To establish a defendant's liability for the constitutional violation, the plaintiff must show either the defendant's direct, personal participation in the constitutional violation, or some sufficient causal connection between the defendant's conduct and the alleged violation." Such conclusory allegations are

22cv1409-BTM-DDL

insufficient to support an Eighth Amendment claim. *Iqbal,* 556 U.S. at 678.

Ceyala also fails to state an Eighth Amendment claim based on the purported denial of hygiene products. "Indigent inmates have the right to personal hygiene supplies such as toothbrushes and soap," but whether conditions of confinement rise to the level of a constitutional violation may depend on the duration of an inmate's exposure to those conditions. *Keenan*, 83 F.3d at 1089, 1091 (citing *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978)). Here, Ceyala's allegations are again conclusory; he has not alleged what types of hygiene products he was denied or the extent and circumstances under which he was denied them. As such, Plaintiff fails to set forth facts to plausibly allege the purported denial was objectively, sufficiently serious enough to rise to the level of a constitutional violation. Moreover, he has not alleged a causal connection between any individual defendant's conduct and the deprivation. *See Starr*, 652 F.3d at 1205–06. Thus, Ceyala fails to state a plausible Eighth Amendment claim as to denial of hygiene products. *See Iqbal,* 556 U.S. at 678.

Based on the foregoing, the Court dismisses Plaintiff's Eighth Amendment claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121.

### D.    Sixth Amendment

Finally, Plaintiff alleges his Sixth Amendment right to counsel was violated by Defendants when legal mail was opened outside his presence. ECF No. 1 at 7. Inmates have Sixth Amendment rights with respect to attorney-client correspondence marked as legal mail. *See Wolff*, 418 U.S. at 576–77. To that end, the Ninth Circuit has held prisoners have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017) (finding that the "practice of opening legal mail in the prisoner's presence is specifically designed to protect" the "Sixth Amendment right to confer privately with counsel").

Ceyala states that on December 19, 2022, a correctional officer delivered a piece of legal mail to him "that came opened from ISU, under J. Hill's orders." *Id.* He contends the

mail had been "poorly taped up to try to cause deception." *Id.* But Ceyala does not specify who sent the mail or whether it was properly marked as "legal mail." Nor does he specify whether the mail was related to a criminal or civil matter, or whether it was from counsel. To state a claim, Ceyala must plausibly allege that the mail opened outside his presence was "protected" legal mail by explaining who sent it and whether it was properly marked. *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017); *see also Mangiaracina*, 849 F.3d at 1196 (concluding the district court properly dismissed the plaintiff's claim at the pleading stage when he failed to allege the envelopes were properly marked as legal mail). For instance, "mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan*, 83 F.3d at 1094. Therefore, Ceyala has failed to state a Sixth Amendment claim as to any named Defendant. *See* 28 U.S.C. § 1915A; *Wilhelm*, 680 F.3d at 1121.

### E.   Leave to Amend

In light of his pro se status, the Court grants Plaintiff leave to amend to attempt to address the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court:

1.   **DISMISSES** all claims in Plaintiff's Complaint against all Defendants without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915A(b).

2.   **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint that cures the deficiencies of pleading noted in this Order. Plaintiff's First Amended Complaint must be complete by itself without reference to any previous version of his Complaint. Any Defendants not re-named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542,

1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"). If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated:  May 31, 2023

Hon. Barry Ted Moskowitz
United States District Judge

22cv1409-BTM-DDL